LEE, P.J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. On August 14, 2000, Roderick Wells was attempting to cross a two-lane highway when his car was struck by a Tru-Mark Grain tractor-trailer driven by Le-voy Knight. Roderick died from massive head trauma approximately fourteen min *183 utes after the crash. Roderick’s mother, Sheila Wells, subsequently filed a wrongful death suit against Tru-Mark and Knight alleging negligence in Knight’s operation of the tractor-trailer. After a three day trial, a jury in the Pike County Circuit Court returned a verdict on February 20, 2003. The jury assessed damages of $270,000, but found the defendants only thirty percent liable. The result was a jury verdict for Wells in the amount of $81,000.
¶2. Wells filed a motion for judgment notwithstanding the verdict on damages only or, in the alternative, for a new trial on damages. This motion also included a request for clarification of judgment or an additur. A hearing on the matter was held March 10, 2003, and the court entered its order on April 10, 2003, denying Wells’s post-trial motions. On May 21, 2003, Wells also filed a motion for relief from judgment pursuant to Mississippi Rules of Civil Procedure 60. The court denied this motion on July 9, 2003. Wells now appeals to this Court asserting that the jury verdict was against the overwhelming weight of the evidence and the trial court erred in refusing to grant an additur or, in the alternative, a new trial on damages.
I. WAS THE JURY . VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT AN ADDI-TUR OR, IN THE ALTERNATIVE, A NEW TRIAL ON DAMAGES?
¶ 3. As both of Wells’s issues concern the amount of damages awarded by the jury, we will analyze them together. In her first issue, Wells argues that the jury award of $81,000 is contrary to the overwhelming weight of the evidence. In her second issue, Wells claims that the trial court erred in refusing to grant an additur or, in the alternative, a new trial on damages.
¶ 4. Miss.Code Ann. § 11-1-55 (Rev. 2002) provides:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an addi-tur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence ....
¶ 5. When this Court reviews whether the trial judge erred in denying a motion for additur we are limited to an abuse of discretion standard of review. Maddox v. Muirhead, 738 So.2d 742(¶ 5) (Miss.1999). The focus at the appellate level is whether the trial judge abused his discretion in denying the motion for addi-tur, not upon the jury’s action in awarding damages. McNair Transport, Inc. v. Crosby, 375 So.2d 985, 986 (Miss.1979). The burden of proving injury and other damages falls to the party seeking the additur. Id. We must view the evidence in the light most favorable to the party against whom the additur is sought and must give him the benefit of all favorable inferences that may be reasonably drawn therefrom. Id. “Awards set by jury are not merely advisory and generally will not be ‘set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ” Maddox, 738 So.2d at 743 (¶ 5) (citing Rodgers v. Pascagoula Public School Dist., 611 So.2d 942, 945 (Miss.1992)). “Additurs represent a judicial incursion into the traditional habitat of *184 the jury, and therefore should never be employed without great caution.” Id.
¶ 6. Wells states that she presented overwhelming evidence of damages sustained by the death of Roderick. Most of the evidence concerned Roderick’s character. Roderick was portrayed as a good kid, one who maintained good grades but was also being recruited by various colleges to play basketball. Roderick was also described as a responsible young man who was well thought of by his peers and teachers.
¶7. The only other testimony dealing with damages was given by Dr. Robert Culbertson, an economist who performed a loss of earning capacity analysis. Culbertson determined that Roderick had a life expectancy of at least fifty-two more years. Culbertson further concluded that, based on Roderick’s grades and basketball ability, he would have attended college, entered the workforce after graduating, and worked approximately forty-two years. Culbertson noted that he did not take into account a professional basketball career in determining Roderick’s loss of earning capacity. Culbertson determined Roderick’s net loss of earning capacity as a result of his death to be $1,413,304.
¶ 8. On cross-examination, Culbertson admitted that it sounded reasonable for the work life expectancy to be ten years less than he had stated originally, or thirty-two rather than forty-two years. Culbertson also agreed that only one in three college scholarship basketball players actually graduate. Furthermore, Culbertson did admit that he based Roderick’s $52,000 post-college starting salary on jobs relating to engineering, chemistry, mathematics, and physics. According to Culbertson, the starting salary for a graduate in humanities would be about $40,000 and the social sciences would be about $38,000.
¶ 9. After the hearing on the motion for a new trial on damages, the trial judge stated the following:
But while I might disagree with the jury on the quantum damages, I also might disagree with the jury on the apportionment of fault or fault at all. And it’s just not our system for me to impose my opinion when it’s a jury issue, and it was a jury issue.
The trial judge later went on to say that he did not think the jury made a mistake; thus, he denied Wells’s posttrial motions. The jury had the opportunity to see the witnesses and weigh their testimony. The trial judge did not find that the jury award was awarded contrary to the overwhelming weight of the evidence nor did the judge find that the jury was influenced by bias, prejudice, or passion. We find the same.
¶ 10. In her argument, Wells further contends that one of the jury instructions which directed the jury to subtract from the present cash value the amount Roderick would have paid in income tax was not supported by testimony or Mississippi law. We note that after Tru-Mark objected to a calculation by Culbertson concerning deduction for income taxes, Wells stated that topic was a proper subject for cross-examination. Although Culbertson did not deduct income taxes from his final sum, he agreed that the tax rate on the annual earnings he assumed in his calculations could easily approach 30-35%. However, as Wells never objected to the jury instruction, we fail to see how she can now complain.
¶ 11. As an aside, Wells also argues that the jury was confused in determining the apportionment of liability. During the course of deliberations, the jury sent four notes to the trial judge. The first two dealt with exhibits, the third stated, “If we arrive at a % and a *185 $ amount, does the plaintiff receive % of $ amount?”, and the fourth stated that the jury was deadlocked. In regards to the third note, the trial judge conferred with Wells’s attorney and Tru-Mark’s attorney. They all decided that since the note dealt with jury instruction 15, stating the form of the verdict, the trial judge would just reread that particular instruction. After the verdict was rendered, the trial judge, in order to make sure there was no confusion, asked if $270,000 was the total amount of damages proven by Wells. Ten jurors raised their hands. The trial judge then asked if the fault attributable to Knight was 30%, and nine jurors raised their hands. After the hearing for a new trial on damages, the trial judge also stated the following:
[T]he verdict was small, and I was concerned that the jury had misread that instruction. And I think the record — I recall specifically questioning the jury about the amount of damages they intended to award, and I think the record will reflect that. I don’t think the jury was mistaken. And there was a — just the panel, it was a very intelligent jury, and I don’t think there was a mistake. But even though I didn’t think there was a mistake, I questioned it.
We agree with the trial judge that the jury was not confused in determining damages and liability.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY BRIDGES, P.J., AND IRVING, J.